W. A. Storing Co., Appellant, *v.* Porterfield, Tax Commr.,
Appellee.

(No. 8949—Decided July 2, 1968.)

*Messrs. Henney & Shaefer*, for appellant.
*Mr. William B. Saxbe*, attorney general, and *Mr. Jon A. Ziegler*, for appellee.

DUFFEY, P. J. This is an appeal and cross-appeal from a decision of the Board of Tax Appeals affirming a sales tax assessment. The Tax Commissioner, G. W. Porterfield, complains of the board's finding that a certain percentage of taxpayer's equipment and supply purchases was exempt from tax as used in the production of tangible personal property for sale. Appellant taxpayer, W. A. Storing Company, has cross-appealed assigning as errors: (1) the determination was "inconsistent" in adjusting the assessment for some but not all exempt sales transactions; (2) the notice of intention to levy an assessment under Section 5739.03, Revised Code, was not proper and did not bind the taxpayer; (3) the board erred in finding certain equipment and supply materials were not used in the production of tangible personal property for sale and thus not entitled to exemption.

A tax audit of taxpayer's business was assigned by the Tax Commissioner on April 20, 1965. On April 29, 1965, a notice of intent to levy an assessment against the taxpayer was delivered to the taxpayer. Such a notice is often called a "sixty-day letter." Taxpayer made no response within 60 days of notice to establish that its sales were exempt transactions. Notice of assessment was

served on the taxpayer December 15, 1965. Taxpayer filed a petition for reassessment and offered proof of exempt transactions.

The Tax Commissioner allowed exemption for some sales transactions, but refused to accept proof of exempt status for other transactions. The taxpayer appealed to the Board of Tax Appeals. The board found that the taxpayer's proof of exemption was not offered within 60 days of notice. It held that under Section 5739.03, Revised Code, the Tax Commissioner did not have to accept the untimely offer of proof and, therefore, that all transactions not established as exempt within the 60 days were taxable. The board did not increase the assessment in accordance with this finding. Instead, it affirmed the assessment as made by the Tax Commissioner. Compare *Dixon* v. *Bowers, Tax Commr.* (1963), 119 Ohio App. 437.

However, on the taxpayer's claim of exemption for equipment and supply materials purchased for use in the production of tangible personal property for sale, the board allowed an exemption apparently based on a percentage of sales transactions to nonsales transactions. Both the taxpayer and the Tax Commissioner have appealed that part of the board's ruling.

Section 5739.03, Revised Code, provides in part:

"If any sale is claimed to be exempt * * * the vendor must obtain from the consumer, a certificate, specifying the reason that the sale is not legally subject to the tax. * * * If no certificate is furnished or obtained within the period for filing the return for the period in which such sale is consummated, it shall be presumed that the tax applies. The failure to have so furnished, or to have so obtained, a certificate shall not prevent a vendor or consumer from establishing that the sale is not subject to the tax within 60 days of the giving of notice by the commissioner of intention to levy an assessment, in which event the tax shall not apply."

The taxpayer contends that to be a proper notice within the statute the Tax Commissioner must specify or describe the transactions he is challenging. It is argued

that a mere notice of intent to make a general audit is not sufficient. We disagree. In our opinion, the burden is upon the taxpayer both in the first instance and upon receipt of a 60-day notice to establish the exempt status of any sales transaction.

Section 5739.02, Revised Code, states in part:

"For the purpose of the proper administration of Sections 5739.01 to 5739.31, inclusive, of the Revised Code, and to prevent the evasion of the tax, *it is presumed that all sales* made in this state are subject to the tax until the contrary is established." (Emphasis added.)

Section 5739.03, Revised Code, is even more explicit in saying that if no certificate is obtained by the vendor, "it shall be presumed that the tax applies." The 60-day period after notice is an exception to the mandatory presumption and is itself peremptory.

A comparison of the amendments of Section 5739.03, Revised Code, makes the intent of the General Assembly clear. In 1953, the statute required proof to be furnished within the semiannual period. (125 Ohio Laws 308.) In 1955, this requirement was removed, and a taxpayer could prove exemption without limitation as to time. (126 Ohio Laws 723, 724.) The 1959 amendment limited the right to 60 days after notice. (128 Ohio Laws 428, 429.) See, also, *Steubenville White Truck Sales & Service, Inc.,* v. *Peck, Tax Commr.* (1954), 162 Ohio St. 251, and *Bellows Co.* v. *Bowers, Tax Commr.* (1956), 165 Ohio St. 9. In our opinion, the present statute precludes the establishing of an exemption by certificate obtained or proof offered after the expiration of the 60-day period.

In the present case the Tax Commissioner accepted proof of exemption after the 60-day period had expired. To offer a compromise or settlement of a disputed assessment is, of course, proper. If settlement is refused by the taxpayer, the duty of the Tax Commissioner is to apply the law to the facts as he finds those facts. It is difficult to conceive of any basis upon which the Tax Commissioner could have authority to directly waive the requirements of Section 5739.03, Revised Code. Even if such authority

be assumed, there is no indication of the criteria upon which waiver would be given for some transactions but rejected as to others. In the absence of objective standards, the possibility of discriminatory treatment of taxpayers is apparent.

The case will be remanded for recomputation of the assessment disallowing exemption for sales transactions not shown to be exempt by proof timely presented. All such transactions are to be treated as taxable for the audit periods involved in this litigation, and the assessment increased accordingly.

In passing upon the claimed exemption of equipment and supplies, the board found that 25.9 per cent of the taxpayer's business was the sale of tangible property and 74.1 per cent was the sale of services. It then apparently held that 25.9 per cent of the taxpayer's equipment and supply purchases was exempt as used in production and computed the tax on that basis.

In *Mead Corp.* v. *Glander, Tax Commr.* (1950), 153 Ohio St. 539, the Supreme Court was concerned with the problem of the tax treatment of a single piece of equipment or property owned by one person and used for several purposes. The court pointed out that there was no statutory authority to split or divide the property for tax purposes into proportions or percentages of use. The court held that the primary use of the property was determinative of its tax status.

In our opinion, the *Mead* primary-use test only applies to equipment having two or more uses, one of which is taxable and one of which is not taxable. Any purchase of equipment used solely for services cannot be granted a partial exemption. Likewise, equipment used solely to produce tangible personal property for sale is entitled to full exemption. If any equipment is used for both production for sale and for services, the *Mead* doctrine is applicable, and its tax status depends upon its primary use.

No such problem is presented by supplies which are physically divisible such as stationery, ink, etc. The *Mead* test has no application. The problem is to determine how

much of the divisible supplies is used in production and how much is not. However, the percentage of sales to services is competent evidence of the amount of supplies used for each purpose. Accordingly, we accept and approve the board's application of the 25.9 per cent rate to office and similar divisible supplies.

With respect to equipment the critical issue of use depends upon determining which transactions are sales of property and which constitute service.

The taxpayer's business is the providing of addresses for, and the addressing of, material for distribution by mail. Addresses are compiled into lists or lists are purchased. The addresses are imprinted on metal plates called Pollard-Alling plates.

Two items of business comprise 43.1 per cent of the taxpayer's activities. They illustrate the basic processes used in the business. In these the taxpayer uses Pollard-Alling plates to print addresses directly onto mailing pieces, or onto a paper tape which is then divided into individual labels which are attached by adhesive onto the mailing material. The material is then prepared for mailing in accordance with postal regulations.

Section 5739.01 (B), Revised Code, provides in part: "(B) 'Sale' and 'selling' include all transactions * * * by which printed, imprinted, overprinted, lithographic, multilithic, blueprinted, photostatic, or other productions or reproductions of written or graphic matter are or are to be furnished or transferred * * *."

See, also, Departmental Regulation TX-15-07, and *City Blue Printing Co.* v. *Bowers, Tax Commr.* (1955), 163 Ohio St. 6.

In our opinion, the direct use of Pollard-Alling plates to place addresses upon either a tape or mailing materials is printing. Therefore, equipment or supplies used solely or primarily in that process are exempt. See *Youngstown Building Material & Fuel Co.* v. *Bowers, Tax Commr.* (1958), 167 Ohio St. 363.

However, the process of affixing proper labels obtained from address tapes is not printing. In our opinion,

that process is a service. Equipment used solely or primarily in that process is not exempt. See *Ohio Stove Co. v. Bowers, Tax Commr.* (1961), 171 Ohio St. 484.

The evidence of record does not provide sufficient information on which equipment, if any, is used solely for the printing process or solely for the service of affixing labels. Perhaps some equipment performs both processes. The determination of exemption for such equipment requires evidence directed to its actual use. If an item of equipment is used for both processes, the evidence must also be directed to the relative amount of use for each process.

Some question has been raised concerning equipment and supplies used to prepare mailing material for mailing. Equipment, packaging and protective materials which are necessary to get a product to a customer are not taxable. *Metropolitan Brick, Inc.,* v. *Bowers, Tax Commr.* (1961), 115 Ohio App. 389. In our opinion, if the taxpayer has engaged in printing for sale (*i. e.,* direct printing on mailing material by Pollard-Alling plates, or printing on tapes which are then sold to the customer), the preparation for mailing is part of production and property so used is exempt. If the preparation is not in connection with printing for sale, the preparation process is not part of production. Obviously, if equipment is used for some transactions which involve the sale of printing and others which do not, then the *Mead* test must be applied.

The order of the board is not lawful or reasonable and must be reversed. The cause will be remanded for (1) recomputation of the tax on sales transactions with instructions to refuse exemption as to all transactions for which proof was not furnished within the statutory time period prescribed by Section 5739.03, Revised Code, and (2) redetermination of the portion of the assesment based upon exemption for equipment used in production, such redetermination to be based on the actual use of each piece of equipment.

*Judgment accordingly.*

TROOP and HERBERT, JJ., concur.