Per Curiam.

Maxxim contends that R.C. 5739.03(B) relieves it from establishing each customer’s use and therefore all its sales of TENS and NMES units were exempt. We disagree.
R.C. 5739.02 provides that an “excise tax is hereby levied on each retail sale made in this state,” and for the proper administration of R.C. Chapter 5739 “to prevent the evasion of the tax, it is presumed that all sales made in this state are subject to the tax until the contrary is established.” Thus, until proven exempt or excepted from taxation, all retail sales are taxable.
R.C. 5739.03(B) provides two opportunities for a vendor to relieve itself of the obligation to collect the tax. If a sale is claimed to be exempt, the consumer must furnish the vendor a certificate specifying the reason the sale is not legally subject to tax. The certificate must be furnished within the period for filing the return in which the sale is consummated. R.C. 5739.03(B) further provides that if no exemption certificate is obtained within the period for filing the return, it shall be presumed that the tax applies. Here, no exemption certificates were provided to Maxxim by its customers for the sales being contested.
R.C. 5739.03(B) provides a second chance for a vendor to establish that a sale is not subject to the tax by providing that, after a vendor has received a notice of intention to levy an assessment, it may obtain letters of usage from its customers. By means of timely and proper letters of usage the vendor may establish that the sale is not subject to the tax. No disallowed letters of usage are being questioned in this appeal.
Finally, R.C. 5739.03(B) provides that certificates need not be obtained, or furnished, when the identity of the consumer is such that the transaction is never subject to the tax imposed or the item of personal property sold is never subject to the tax regardless of use. Maxxim relies upon this latter portion of R.C. 5739.03(B) to claim that its sales are not subject to tax.
In Federated Dept. Stores, Inc. v. Lindley (1983), 5 Ohio St.3d 213, 215, 5 OBR 455, 457, 450 N.E.2d 687, 688, we stated that “when an assessment is contested, the taxpayer has the burden ‘ * * * to show in what manner and to what extent * * * ’ the commissioner’s investigation and audit, and the findings and assessments based thereon, were faulty and incorrect.” The Tax Commissioner’s findings are presumptively valid, absent a demonstration that those findings are *340 clearly unreasonable or unlawful. Hatchadorian v. Lindley (1986), 21 Ohio St.3d 66, 21 OBR 365, 488 N.E.2d 145, paragraph one of the syllabus. Thus, the burden was on Maxxim to prove that its sales of the TENS and NMES units were exempt regardless of use.
R.C. 5739.02 does except from taxation the sale of certain personal property no matter what its use, for instance, the sales of food for human consumption off the premises where sold. Additional examples of sales that are exempt regardless of the use are contained in R.C. 5739.02(B)(1) to (11). However, the sale of TENS and NMES units is not among those sales listed as being exempt regardless of the use. Maxxim has not referred us to any statute that would exempt the sales of the TENS and NMES units regardless of use.
Here the only asserted exemption for the sale of TENS and NMES units is contained in R.C. 5739.02(B)(19), which provides an exemption for “devices to aid human perambulation” and “items of tangible personal property used to supplement impaired functions of the human body such as respiration, hearing, or elimination.” While the BTA did find that the TENS and NMES units “can aid human perambulation,” it also found that the TENS and NMES units can be used to strengthen “dysfunctional parts of the body, akin to physical fitness equipment.” (Emphasis by BTA.) R.C. 5739.02(B)(19) specifically provides that no exemption is allowed for “physical fitness equipment.” The evidence showed that the units have a multitude of uses, including treatment of elbow and shoulder ailments, itching, and chronic pain throughout the body. These uses do not aid human perambulation.
The mere fact that a device “can” be used for an exempt purpose, such as aiding human perambulation or to supplement impaired functions of the human body such as respiration, hearing, or elimination, does not mean that its sale is always exempted or excepted from taxation regardless of its use. Because the sales of TENS and NMES units are not exempt from tax regardless of their use, Maxxim had to provide either certificates of exemption or acceptable letters of usage to account for its failure to collect the tax. Maxxim failed to provide such documents for the sales in dispute and, therefore, failed to meet its burden of proof.
Maxxim contends that no tax can be charged to the patient/consumer receiving the TENS and NMES units that were paid for by the Bureau of Workers’ Compensation (“BWC”). We disagree.
Maxxim bases its contention on former R.C. 4121.44(P). Maxxim argues that R.C. 4121.44(P) prevents the tax from being collected from the claimant, and therefore Maxxim is relieved from any obligation to collect the tax.
The language contained in R.C. 4121.44 upon which Maxxim relies provided:
*341 “The administrator of workers’ compensation shall adopt rules to ensure that the following requirements are met with respect to any payments made to health care providers for a claim pursuant to Chapter 4123. of the Revised Code:
a ‡ sfc
“(P) Provide that where a fee bill for services or supplies rendered or provided has been submitted by a health care provider to the bureau for assignment and the fee bill has been approved for payment by the bureau, the health care provider may not assess the claimant or the employer for the difference between the amount allowed by the bureau and the health care provider’s charge[.]” (143 Ohio Laws, Part II, 3296.)
When the purchase of a TENS or NMES unit is approved by the BWC for a claimant, the bill for the unit is paid by the BWC. However, the amount paid by the BWC does not include any sales tax. Usually the amount paid to Maxxim by the BWC is less than the amount billed by Maxxim, necessitating that Maxxim write off the unpaid balance. The BTA determined that the tax base for calculating Maxxim’s tax liability should reflect the actual amount collected from BWC, not the billed amount. That portion of the BTA’s decision was not appealed.
The sale of the TENS or NMES unit is made to an individual. No sale is made to BWC, although the BWC makes the payment for the sale. Maxxim contends that the language of R.C. 4121.44(P) prevents it from collecting the sales tax from the patient who receives the unit.
There is no dispute between the parties that the person who receives the TENS or NMES unit is the consumer for tax purposes, not the BWC. R.C. 5739.01(D)(1) provides that the “consumer” is “the person * * * to whom the transfer effected or license given by a sale is or is to be made or given.” R.C. 5739.03 provides that the tax “shall be paid by the consumer to the vendor, and each vendor shall collect from the consumer, as trustee for the state of Ohio.” R.C. 5739.13(A), formerly R.C. 5739.13, provides that “if any vendor fails to collect the tax or any consumer fails to pay the tax,” the Tax Commissioner “may make an assessment against either the vendor or consumer, as the facts may require.” Maxxim did not charge or collect any sales tax on the sales in question.
The tax- chargeable by Maxxim for the TENS and NMES units is not part of the fee for supplies provided by Maxxim. Any tax charged and collected by Maxxim as vendor from the consumer is “not part of the price, but is a tax collection for the benefit of the state and of counties levying an additional tax.” R.C. 5739.01(H)(1). R.C. 5739.03(B) also provides that at the time of delivery the tax should be charged to the account of the consumer and “shall be collected by the vendor from the consumer in addition to the price.” Finally, R.C. 5739.13(A) provides that “[a]n assessment against a vendor when the tax * * * has not been *342 collected or paid, shall not discharge the purchaser’s or consumer’s liability to reimburse the vendor for the tax applicable to such transaction.”
For all the foregoing reasons, the decision of the BTA is reasonable and lawful and is therefore affirmed.

Decision affirmed.

Moyer, C.J., Douglas, Resnick, F.E. Sweeney and Cook, JJ., concur.
Pfeifer and Lundberg Stratton, JJ., dissent.